Dear Mr. Tate:
You have requested an opinion of the Attorney General concerning the use of public equipment and labor on private property in the midst of the worst disaster in Louisiana's history, Hurricane Katrina and its aftermath, and whether our earlier opinion in La.Atty.Gen. Op. No. 92-637 could be extended to assist in reducing the damage to private residential property.
The federal government and federal contractors are available to place plastic sheeting on those roofs of residential dwellings that have obvious holes and to remove large pieces of debris from private residential property that an individual would be unable to remove himself, such as, large trees and water-damaged cars and trucks. In addition, in this disaster the persons living in the parishes in southeast Louisiana were under a mandatory evacuation order beginning on August 25, 2005.
You specifically ask, under what circumstances can a parish utilize not only parish equipment and labor, but also other public equipment and labor under the supervision of the parish on private property in emergency or disaster situations where the residential property owner cannot be reached because of a mandatory evacuation and where the purpose of the entry on private property is to protect the residential dwelling from further damage.
Initially, as was noted in La. Atty.Gen. Op. No. 92-637, Article VII, Section 14 of the 1974 Louisiana Constitution generally prohibits the funds, credit, property or things of value of the state or any political subdivision from being loaned, pledged or donated to or for any person, association or public or private corporation. This constitutional provision recognizes certain exceptions to this general prohibition, one of which is the use of public funds for programs of social welfare for the aid and support of the needy.
We have also issued opinions recognizing the legality of the use of parish and/or municipal equipment and labor for the benefit of private individuals in accordance with systematic programs of financial support for the needy.
In so holding, we note that the parish or municipality should establish objective eligibility requirements to ensure that the activity truly serves only the needy. Attorney General Opinion Nos. 96-348, 94-157, 92-780, 80-115, 78-1259 and 78-1262. We now turn to the issue of emergency conditions. Article I, Section 1
of the Louisiana Constitution provides the following:
 s 1. Origin and purpose of government
 All government, of right, originates with the people, if founded on their will alone, and is instituted to protect the rights of the individual and for the good of the whole. Its only legitimate ends are to secure justice for all, preserve peace, protect the rights, and promote the happiness and general welfare of the people. The rights enumerated in this Article are inalienable by the state and shall be preserved inviolate by the state.
We noted in La. Atty.Gen. Op. No. 92-637 a distinction should be made between the ordinary day-to-day use of parish personnel and equipment for the benefit of private individuals, and the use of these same resources to promote the general welfare of the people of this State during times of disaster and emergency. We found support for our position in R.S. 29:721 through 736 entitled, "Louisiana Emergency Assistance and Disaster Act" (Act). Section 722 enumerates the purposes for which the Act was passed, including the following:
 A. Because of the existing possibility of the occurrence of emergencies and disasters . . . resulting from . . . fire, flood, earthquake, or other natural or man-made causes and in order to ensure that preparations of this state will be adequate to deal with such emergencies or disasters, and generally to preserve the lives and property of the people of the state of Louisiana, it is hereby found and declared to be necessary:
 * * *
 (2) To confer upon the governor and the parish presidents the emergency powers provided in this Chapter.
 * * *
 (4) To reduce vulnerability of people and communities of this state to damage, injury and loss of life and property resulting from natural or man-made catastrophes. . . .
 (5) To prepare for prompt and efficient evacuation, rescue, care and treatment of persons victimized or threatened by disasters or emergency.
 (6) To provide a setting conducive to the rapid and orderly start of restoration and rehabilitation of persons and property affected by emergencies or disasters.
 (7) To authorize and provide for cooperation in emergency or disaster prevention, mitigation, preparedness, response, and recovery.
 Section 723 defines the following terms for purposes of the Act:
 (1) "Disaster" means the result of a natural or man-made event which causes loss of life, injury, and property damage, including but not limited to natural disasters such has hurricane, tornado, storm, flood, high winds, and other weather related events. . . .
 * * *
 (4) "Local governmental subdivision" means a parish of the state of Louisiana.
 (5) "Parish president" means the president of any parish, mayor-president, mayor of New Orleans (Orleans Parish), or police jury president.
In particular, two of these subsections in Section 722: (4) To reduce vulnerability of people and communities of this state to damage, injury and loss of life and property resulting from natural or man-made catastrophes. . . . and (6) To provide a setting conducive to the rapid and orderly start of restoration and rehabilitation of persons and property affected by emergencies or disasters, suggest that to do otherwise than to engage all possible services to protect residential private property will reduce the state's ability to protect its citizens.
Here, in the aftermath of Hurricane Katrina where much of southeast Louisiana has been evacuated and Louisiana citizens are scattered in over thirty states, it is not possible to obtain a right of entry from the authorized landowner. However, various parishes want additional help for their residential property owners, but cannot provide that assistance because the parish workers themselves are evacuees.
Here to reduce the vulnerability of people and communities of this state to damage and further loss of property from this natural catastrophe, the most prudent course of action is to permit those parishes that wish to avail themselves of the services of men and equipment that other public entities can provide, including the federal government and its contractors, best serves the Constitution of Louisiana and its people.
In addition, another subsection of Section 722: (7) to authorize and provide for cooperation in emergency or disaster prevention, mitigation, preparedness, response, and recovery, we have interpreted to mean, in Op. Atty.Gen. No. 01-0204, June 21, 2001, that once a local disaster or emergency is declared by parish presidents or emergency preparedness agencies designated by them, the parish is the primary authority in dealing with local disasters or emergencies. Nonetheless, the clear and overriding intent of the legislature was for cooperative interaction between responsible public agencies. Thus, we believe it particularly appropriate to provide guidance on the use of other than parish, yet public equipment and employees and appropriate public contractors.
Section 724 provides the procedures for the declaration of an emergency or disaster by the governor. Section 727 provides the procedures for the declaration of a local disaster or local emergency by a parish president. The purpose of these declarations is to give the governor and/or the parish president the reasonable and necessary powers to carry out the provisions of the Act.
Further, Section 735 grants general immunity to personnel of the State or any political subdivision thereof, for any actions carried out pursuant to the Act resulting in the death of, or injury to persons, or damage to property as a result of such actions.
In summary, it is the opinion of this office that, while in general, the use of parish equipment and labor on private property is prohibited by Article VII Section 14 of the Louisiana Constitution, public equipment and labor, which may include more than only parish equipment and labor in catastrophic circumstances, may be used without an authorized right of entry to protect the residential private property of the citizens in those areas in southeast Louisiana that experienced such severe flooding that the citizens have been unable to return to their homes in the event of a declaration of an emergency or disaster in accordance with R.S. 29:721 et seq.
As we did in responding in La. Atty.Gen. Op. No. 92-637, I am enclosing a copy of the "Louisiana Emergency Assistance and Disaster Act" for your reference and convenience. In all cases, discretion should be exercised so that the level of the services provided are not so excessive that they constitute an unconstitutional use of public personnel and equipment.
We hope this response adequately responds to your inquiry, however, if we can be of further assistance, please advise.
 Respectfully submitted,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL